IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS ARTHUR IVERS,<br><br>Defendant. | Case No. 3:16-cr-00347-AA<br>**OPINION AND ORDER** |

AIKEN, Judge:

I previously found defendant Douglas Arthur Ivers incompetent to stand trial and ordered him hospitalized. Following the four-month hospitalization period provided for in 18 U.S.C. § 4241(d), I convened a hearing to reassess defendant's competency. At the conclusion of that hearing, I deemed defendant competent to assist in his own defense and proceed to trial. This opinion sets out in more detail my reasons for deeming defendant competent.

Defendant was indicted in August 2016 for threatening to assault and murder a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B) and 18 U.S.C. § 875(c). Defendant was initially represented by the Federal Defender's office, but disagreements quickly arose between defendant and his appointed counsel. In October 2016, he filed a motion to

Page 1 – OPINION AND ORDER

proceed *pro se* and to dismiss all the charges against him. Because both defendant and his lawyer represented to the Court that their differences could not be overcome, I appointed plaintiff's current counsel, Lisa Ludwig, to represent him at his competency hearing.

The competency hearing began on January 24, 2017. I continued that hearing to February 23, 2017, to permit defendant to introduce witnesses and evidence, pursuant to 18 U.S.C. § 4247(d). At the conclusion of the February 23 hearing, I concluded that defendant was not competent to proceed to trial or assist in his own defense because he was "presently . . . suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* § 4241(a). Defendant was then hospitalized for four months at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri. *See id.* § 4241(d)(1).

At the time of his initial competency hearing, defendant believed that he was the victim of a large-scale governmental conspiracy stemming from his alleged role as an informant in the investigation of various motorcycle gangs. He alleged that federal authorities (he most commonly names the CIA and FBI) implanted a "non organic foreign body/object" into his brain and had been using the implant to torture him. Beginning shortly after his indictment and continuing through nearly the full term of his hospitalization, defendant filed dozens of motions, letters, and notices—totaling hundreds of pages—with the Court, requesting protection from the federal government, surgery to have the implant removed, and dismissal of the charges against him. In connection with these filings, defendant repeatedly submitted to the Court a copy of a noncontrast head CT scan, which he contends shows the implant, notwithstanding the evidence that multiple physicians have reviewed the scan and told him it is normal. Defendant also made numerous requests for change of venue and recusal; contended that Ms. Ludwig and the

Assistant United States Attorney assigned to his case, Hannah Horsley, were part of the conspiracy against him; and filed a complaint against me with the Ninth Circuit.

Defendants' filings abruptly stopped in November 2017. Late that month, defendant submitted a motion to withdraw his previous filings. In that motion, he apologized for his prior filings and in particular complaints directed at me, Ms. Ludwig, and Ms. Horsley. He stated that he now believes that Ms. Ludwig is "more than capable of handling his defense." With respect to his concerns regarding "possible medical conditions, rights violations, etc.," defendant wrote that he "understands that those issues (although serious to the defendant) may not be appropriately addressed with this court during these proceedings." Finally, he stated that he was withdrawing his Ninth Circuit complaint, understood that competency hearings are designed to protect the rights of the accused, and affirmed his "full confidence in this court to fairly adjudicate this case in the future."

Shortly after receiving that motion, the Court received a forensic report prepared by Elizabeth A. Tyner, a clinical psychologist who treated defendant during his hospitalization. Dr. Tyner opined that, following his hospitalization, defendant was competent to stand trial. Dr. Tyner noted that defendant manifested symptoms of psychosis in 2004 and again in 2015, periods which coincide with methamphetamine use. Because symptoms of schizophrenia can be similar to symptoms of methamphetamine-induced psychosis, Dr. Tyner was unsure whether defendant's delusional beliefs had an organic or substance-induced origin.

Dr. Tyner's report documents that, at the beginning of his commitment, defendant wrote letters reflecting the same government conspiracy/brain implant beliefs outlined above. Throughout his commitment, defendant refused to consent to the administration of antipsychotic medication. His providers held a hearing pursuant to *Washington v. Harper*, 494 U.S. 210

(1990), and concluded that defendant did not present the sort of risk to himself or others that would warrant involuntary administration of antipsychotic medication. By all accounts, however, defendant did well during his term of commitment. He participated in therapy, became a unit orderly, worked hard, and painted a mural. At the end of his commitment, defendant told Dr. Tyner that he had realized how "far-fetched" his beliefs had been. He represented to her that he now believed, "with 99.9% certainty," that the government was *not* against him and that he did *not* have an implant in his brain.

Dr. Tyner reported that, at the end of his hospitalization, defendant was administered the Inventory of Legal Knowledge ("ILK"). Defendant answered every question on the ILK correctly, a 99th percentile score. Dr. Tyner also noted that she had assessed defendant using the MacArthur Competence Assessment Tool-Criminal Adjudication. Defendant answered all questions correctly in the areas of Understanding and Reasoning, but tested as having clinically significant impairment in the area of Appreciation. Dr. Tyner wanted to discuss the circumstances of defendant's case in order to probe the extent of the Appreciation problems, but defendant informed Dr. Tyner that he did not wish to discuss the circumstances of his case or legal strategy with anyone but his attorney, Ms. Ludwig. Defendant did, however, agree to provide a narrow waiver of attorney-client privilege so that Ms. Ludwig could provide Dr. Tyner (and later to the Court) with information relevant to assessing his competency. Ms. Ludwig told Dr. Tyner that, by the end of defendant's hospitalization, she was able to communicate with defendant in a "very rational" manner and that he showed the ability to take a "logical approach to this case."

Dr. Tyner concluded her report by stating:

> It is clear that the defendant demonstrated ability to understand the nature and potential consequences of the proceedings against him. He has gained

sufficient rational appreciation of his case and has shown that he could make reasoned choices. He can now meaningfully assist in his defense and speak without focusing upon his delusional beliefs. Even though he did not disclose to me some information that he plans to tell his attorney, there was no indication that was based upon irrational thinking. It is my opinion that he is currently competent to stand trial or make other decisions regarding his case. Symptoms of his mental illness, while perhaps still present but vastly improved by being in either partial or full remission, do not currently compromise his competency-related abilities.

After the Court received Dr. Tyner's report, the government filed a motion for a mental competency determination pursuant to 18 U.S.C. § 4241(d) and (e). In that motion, the government asked the Court to find defendant competent to proceed and to set a trial date. In the alternative, the government requested a hearing pursuant to *Sell v. United States*, 539 U.S. 143 (2003), to determine whether to authorize the involuntary administration of antipsychotic medication to render defendant competent. The government attached several exhibits to its motion. Those exhibits show that, notwithstanding defendant's representations to Dr. Tyner, he continues to believe that he is a target of a government conspiracy and that there is an implant in his brain. Defendant also wrote a letter to this Court, dated February 12, 2018, manifesting those same delusional beliefs.

Defendant appeared at a second competency hearing on February 13, 2018. Dr. Tyner testified by telephone. She reported that she had reviewed the exhibits to the government's motion. Based on the evidence the defendant continues to have symptoms of psychosis, she revised her diagnosis. She stated that defendant has psychosis/schizophrenia that is not in remission. She believes that his psychotic symptoms have an organic source, though they are significantly exacerbated by methamphetamine use. Despite those changes to her opinion, Dr. Tyner continued to believe that defendant met the legal standard for competency. She recommended finding defendant competent notwithstanding his persistent symptoms of

psychosis. At the hearing, Ms. Ludwig reported to the Court that defendant continues to demonstrate a sophisticated understanding of the charges against him and the defenses available.

"The standard of competence to stand trial is the ability to understand the nature of the proceedings in which one is engaged and to assist in one's defense." *Spikes v. United States*, 633 F.2d 144, 146 (9th Cir. 1980). Having carefully reviewed the evidence, I find that defendant is competent to stand trial. It is clear that defendant continues to harbor delusions about the implant and his brain and a government conspiracy. However, I rely on the expert opinion of his treating providers as well as the opinion of Ms. Ludwig in concluding that those delusions do not prevent him from understanding the proceedings against him or to assist in his own defense. Defendant's hospitalization appears to have helped him achieve competency in part by dissipating the lingering effects of methamphetamine use, which appears to greatly exacerbate his symptoms. Dr. Tyner opined that defendant's mental state is likely to remain stable if he remains abstinent from methamphetamine use.

Because I find defendant competent to stand trial, the government's motion for a competency examination (doc. 61) is denied as moot.

IT IS SO ORDERED.

Dated this 21st day of February 2018.

                                        Ann Aiken
                                  United States District Judge